# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>388 ROUTE 22 READINGTON HOLDINGS, LLC,<br><br>    Debtor. | Case No. 18-30155 (KCF)<br><br>**Chapter 7 Bankruptcy** |
| SB BUILDING ASSOCIATES LIMITED PARTNERSHIP,<br><br>    Appellant,<br><br>v.<br><br>IRON MOUNTAIN INFORMATION MGMT., LLC,<br><br>    Appellee. | Civil Action No. 22-4275 (RK)<br><br>**OPINION** |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court on an appeal by SB Building Associates Limited Partnership ("Appellant" or "SB") of the Bankruptcy Court's Letter Decision dated June 13, 2022 ("Letter Decision", Bankr. ECF No. 288) finding that (1) Iron Mountain's request for paralegal fees was reasonable, and (2) SB must bear the cost of the sheriff's fee. Appellant filed a brief in support of the subject appeal on September 23, 2022 (ECF No. 8). Iron Mountain Management, LLC ("Appellee") filed a brief in opposition on October 24, 2022 (ECF No. 9), and SB replied on November 17, 2022 (ECF No. 12). After careful consideration of the parties' submissions and for

the reasons set forth below, the Court **DENIES** SB's appeal and **AFFIRMS** the Bankruptcy Court's Decision.

I.  **BACKGROUND**

At the outset, the Court notes that this long, contentious litigation has spanned some 13 years, involved multiple bankruptcy filings, required multiple scheduled sheriff sales, and spawned a myriad of seemingly endless appeals requiring a litany of written opinions from the Bankruptcy Court, this Court, and appellate reviews by the Third Circuit and the New Jersey Supreme Court. In just the recent past, the Appellant SB has appealed the Bankruptcy Court's decisions on at least five separate fee awards. Apropos to the case at bar, the great singer-songwriter Jackson Browne wrote:

> All good things got to come to an end
> The thrills have to fade
> Before they come 'round again
> The bills will be paid
> And the pleasure will mend
> All good things got to come to an end

JACKSON BROWNE, *All Good Things*, on I'M ALIVE (Elektra 1993).

As the issues before the Court are discrete and the underlying proceedings have been described at length by this Court and many others, the Court will only discuss the facts relevant to this appeal. At issue now is S.B.'s appeals relating to approximately $41,000 for services provided by paralegals, and approximately $47,000 for sheriff's fees.

On November 16, 2020, Chief Judge Wolfson issued an Opinion that predominately affirmed the Bankruptcy Court's award of fees to Iron Mountain but remanded "for further proceedings as to the reasonableness of Iron Mountain's request for paralegal fees, and who must bear the cost of the sheriff's fee." *In re 388 Route 22 Readington Holdings, LLC*, No. 20-2954, 2020 WL 6706958, at *1 (D.N.J. Nov. 16, 2020). The District Court sought the Bankruptcy Court

2

to make factual findings with respect two inquiries regarding the reasonableness and compensability of the allotted $41,000 for paralegal fees: (1) "whether attorneys in the non-bankruptcy context generally charge their clients for that particular service"; and (2) for the Bankruptcy Court to "weigh[] the twelve-factor test [established in *In re West Elec., Inc.*, 158 B.R. 37, 40 (Bankr. D.N.J. 1993)]." *Id.* at *7.

Regarding the sheriff's fee, the District Court found that as an initial matter, sheriff's fees are presumed to be paid by the foreclosing seller or mortgagee — in this case, Iron Mountain. *Id.* at *9. However, the Court noted that the "seller pays" rule could be rebutted or "displaced" by the Confirmation Order, "which grants Iron Mountain a right to all 'fees, costs, charges, and attorneys' fees' in the event of default." *Id.* Because the Bankruptcy Court did not discuss — and the parties had not briefed — the question of whether the Confirmation Order shifted the sheriff's fee onto the Debtor's estate, the District Court concluded that it "has no basis to review the [Bankruptcy Court's] decision, even under a deferential standard of review." *Id.* The Court thus remanded for the Bankruptcy Court to initiate further proceedings "regarding who should pay the sheriff's fee based on the parties' understanding of the Confirmation Order." *Id.*

Accordingly, the Bankruptcy Court scheduled briefing and argument on the two issues remanded.[1] Following oral argument on May 17, 2022, the Bankruptcy Court issued a Letter Decision ("Letter Decision", Bankr. ECF No. 288) and Order (Bankr. ECF No. 289) on June 13, 2022. In a well-reasoned 18-paged written decision, the Bankruptcy Court concluded that Iron Mountain's paralegal fee request was reasonable and consistent with market practices, and that the

---

[1] The Bankruptcy Court was not able to immediately act on the remand because SB had appealed the District Court's decision to the Third Circuit, which temporarily divested the Bankruptcy Court of jurisdiction pending the resolution of the proceedings. SB's appeal was ultimately dismissed by the Third Circuit on August 13, 2021. *In re 388 Route 22 Readington Holdings LLC*, C.A. No. 20-3462, 2021 WL 6102086 (3d Cir. Aug. 13, 2021).

Confirmation Order "constituted an agreement to deviate from the 'seller pays' rule, thus entitl[ing] Iron Mountain to include the sheriff's commission as part of its secured claim." (*See* Bankr. ECF No. 289 at 2.)

SB filed the subject appeal on June 27, 2022, contesting both findings. SB argues that the Bankruptcy Court relied on an insufficient factual basis to determine that the paralegal fees were reasonable. Specifically, SB contends that the paralegal billing entries were too vague to determine what work was performed and whether the market would typically compensate such work. (Appellant Br. at 19–26, ECF No. 8.) Regarding the sheriff's fee, SB argues that the Bankruptcy Court erroneously interpreted the Confirmation Order to construe the parties' intent to shift payment of the sheriff's fees away from Iron Mountain. (*Id.* at 8–15.)

## II. **LEGAL STANDARD**

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). The standard of review for Bankruptcy Court decisions "is determined by the nature of the issues presented on appeal." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (Bankr. D.N.J. 2005). A bankruptcy court's factual findings are reviewed for clear error. *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 257 (3d Cir. 1995) (citing *Resyn Corp. v. United States*, 851 F.2d 660, 664 (3d Cir. 1988)). A factual finding is considered clearly erroneous "when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (citations omitted). Legal conclusions, in contrast, are subject to plenary review. *Zolfo*, 50 F.3d at 257. Where an issue presents mixed questions of law and fact, the Court applies the relevant standard to each component of the issue. *Chemetron Corp. v. Jones*, 72 F.3d 341, 345 (3d Cir. 1995). "Fee awards are reviewed for an abuse of discretion, which can occur 'if the judge fails to

apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous.'" *Zolfo*, 50 F.3d at 258 (quoting *Electro-Wire Prods., Inc. v. Sirote & Permutt, P.C. (In re Prince)*, 40 F.3d 356, 359 (11th Cir. 1994)).

### III.    DISCUSSION

#### A.    REASONABLENESS OF THE PARALEGAL FEES

On remand, the Bankruptcy Court held an initial oral argument on January 26, 2022 (Bankr. ECF No. 179) and a subsequent hearing on May 17, 2022, during which Judge Ferguson questioned counsel for Iron Mountain and SB extensively on their billing practices on this matter and others (Bankr. ECF No. 299). David Stein, Esq., of Wilentz, Goldman, & Spitzer, P.A. ("Wilentz"), as counsel for Iron Mountain, represented that his client Iron Mountain, a multibillion-dollar company, was a sophisticated consumer of legal services. (*Id.* at 3:13–17.) In response to Judge Ferguson's inquiry regarding Wilentz's billing practices, Mr. Stein stated that Wilentz bills for and uses paralegal time in non-bankruptcy matters "the same way that appear on the Iron Mountain bill[s] that were submitted to Your Honor for review and consideration." (*Id.* at 3:24 to 4:10.) Mr. Stein explained that its paralegals were used in "assist[ing] the lawyer in ordering title, reviewing title, and assisting with a foreclosure complaint, coordinating with the sheriff of the county, perhaps even going to the client and getting computations on numbers, [and] helping the lawyer put those things together." (*Id.* at 4:10–15.)

In contrast, Mr. Lubetkin, counsel for SB, in response to questioning by Judge Ferguson, acknowledged that his law firm's lawyers "bill their full hourly rate to accomplish tasks such as e-mailing orders to opposing counsel or preparing service lists or serving retention applications." (*Id.* at 5:20–25.). In other words, SB's own legal counsel admitted that his law firm used its

5

lawyers, who billed at the lawyer's rate, to complete more clerically-oriented tasks instead of a more cost-cutting approach utilized by Wilentz. (*id.* at 4:16–22).

On June 13, 2022, the Court issued a written decision in which it devoted eight (8) pages to its review of the reasonableness of Wilentz's paralegal fee application. (*See* Letter Decision at 5–12.) In its thorough evaluation of the fees, the Bankruptcy Judge considered a wide breadth of sources, including but not limited to the Court's 28 years of experience in reviewing such fees (*id.* at 5, 11); the testimony and certifications of both counsel (*id.* at 5, 11); the credentials and qualifications of the paralegal and legal assistant in question (*id.* at 8–9, 11); the billing practices of counsel to Iron Mountain in the instant matter and others (*id.* at 5–6, 8, 10–11); the billing practices of similar firms in the geographic market (*id.* at 5–8); fee applications submitted by firms, including SB and its own counsel, in other bankruptcy matters (*id.* at 7–8); multiple years of invoices submitted by counsel for Iron Mountain (*id.* at 6, 8); the 13-year history of the instant proceedings and the services required by Iron Mountain (*id.* at 6, 10); and each of the hundreds of time entries, including the 164 itemized objections raised by SB (*id.* at 11). The following recitation summarizes the Bankruptcy Court's robust analysis and findings.

The Bankruptcy Court's first inquiry, in keeping with the District Court's instruction, was to determine "whether non-bankruptcy attorneys typically charge and collect from their clients fees for that particular service when performed by a member of that profession, and the rates charged and collected therefor." *Id.* (citing *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 849 (3d Cir. 1994)). Applying *Busy Beaver*'s "market approach," the Bankruptcy Court first noted that "in the more than 28 years I have been on the bench, I have had ample opportunity to observe the billing practices in non-bankruptcy matters both because of 506(b) applications, such as this one, and because of the court's obligation to review the fees of special counsel." (Letter Decision at 5.)

Based on her substantial experience of legal billing practices, Judge Ferguson found that "the manner in which paralegal services were used in this case is consistent with the current practices of other firms of this size in New Jersey." (*Id.*)

The Bankruptcy Court further found that its experience was corroborated by the record. In a colloquy during the Court's second hearing on the issue following remand, counsel for Wilentz represented that Wilentz's billing practices were "consistent inside and outside of bankruptcy" and that the firm's billing practices had never been objected to. (*Id.* at 5–6.) The Bankruptcy Court also noted that Wilentz's representation of Iron Mountain included legal services across both bankruptcy and non-bankruptcy contexts over the eleven (11) years of its representation. (*Id.* at 6.) Reviewing several years of Wilentz's invoices and contrasting those services with the services required by Iron Mountain in the instant proceedings, Judge Ferguson found that the paralegal services were indeed billed consistently across both contexts and in keeping with market practices.[2] (*Id.* at 6–7.)

Judge Ferguson also considered SB's primary objection that certain paralegal time entries for clerical services "would never be paid for by a sophisticated, non-bankruptcy client." (*Id.* at 7.) Recognizing that certain corporate in-house manuals submitted by SB in support of its position "might reflect an idealized version of the market, [] they do not reflect reality." (*Id.*) The evidence contradicting SB's assertion included Wilentz's historical practices, a sample of fee application cover sheets across New Jersey law firms, the Court's extensive knowledge and experience reviewing such practices, and SB's own counsel's practices. (*Id.* at 6–8.) Indeed, in SB's own bankruptcy case, "Lawrence Berger did not object on SB's behalf to the final fee application

---

[2] The Bankruptcy Court also noted that SB's counsel's own billing practices were "similar, if not identical to, those that SB finds objectionable in the Wilentz fee applications currently before this Court." (*Id.* at 8.)

submitted by Jay Lubetkin [] despite the fact that it contained numerous time entries for tasks that were indisputably clerical in nature such as preparing adjournment requests, contacting chambers regarding an adjournment, and mailing a letter." (*Id.* at 7–8 (citing various time entries in Mr. Lubetkin's fee application on Case No. 13-12682).) Judge Ferguson noted that SB's counsel's other fee applications in several other cases reflected the same billing practices. (*Id.* at 8 n.25.) The Court concluded that while "[t]here may have been perfectly valid reasons for [counsel for SB] to be performing clerical tasks in those instances[,] it makes a mockery of SB's objection to Iron Mountain's fees in this case." (*Id.*)

The Bankruptcy Court next reviewed the rates charged by Wilentz for its paralegal services. The paralegal fees billed by Wilentz in its capacity as counsel to Iron Mountain amounted to $41,000 and were divided between one paralegal and one legal assistant who charged hourly rates of $170 and $80, respectively. (*Id.* at 4.) Judge Ferguson observed that these rates were "consistent with, if not substantially lower than, the rates this court has seen in other cases of this type." (*Id.* at 5.) In addition to her own considerable experience reviewing rates, Judge Ferguson also reviewed "a sampling of Fee Application Cover Sheets from New Jersey law firms similar to Wilentz" and found that "[t]hose cover sheets reveal that paralegals at those firms bill at rates between $200 to $400 an hour[,]" which was considerably higher than the subject fees. (*Id.*) These rates were particularly reasonable given the qualifications of the paralegal in question, who "holds two Bachelor of Arts Degrees and who has more than thirty (30) years of experience in performing legal services in foreclosure and bankruptcy matters." (*Id.* at 11.)

As requested by the District Court, the Bankruptcy Court also considered the twelve factors set forth in *West Electronics*.[3] 158 B.R. at 41–42. Having already reviewed the customary fees and awards in similar cases in her *Busy Beaver* market analysis, Judge Ferguson noted that factors four and twelve weighed towards a finding that the $41,000 in fees were "comfortably within the customary range for similar litigation." (Letter Decision at 10.) Regarding the first three factors, the Bankruptcy Court noted that "[d]elegating [certain bankruptcy tasks] to an experienced paralegal who has the skills to perform the task properly saves the client money because the attorney does not need to expend as much attorney time (at a much higher billing rate) explaining the tasks or reviewing the final product for accuracy." (*Id.* at 9.) Judge Ferguson also found that factor 7 militates in favor of the reasonableness of the paralegal fees: "Here, the relevant circumstances are that between foreclosures, sheriff sales, two bankruptcy filings, and numerous appeals, including this one, Iron Mountain has been attempting to enforce its rights for 13 years." (*Id.* at 10.). Over the course of thirteen (13) years of protracted litigation, "the paralegal assigned to the case was familiar with that long history, and thus could accomplish tasks more efficiently without costly review of the case file." (*Id.* at 10.) As to factor 11, the nature and length of the professional relationship with the client, Mr. Stein stated that Iron Mountain was a multibillion-dollar company and a long-term client of the firm. As a result of their longstanding professional lawyer-client relationship, Iron Mountain was charged at a reduced hourly rate for the paralegal services rendered here. (*Id.*)

---

[3] Those factors consider "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstance; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." 158 B.R. at 42 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

As a final note, the Bankruptcy Court discussed its review of the individual itemized time entries. In this regard, Judge Ferguson observed:

> In general, there were a few instances in which the court might have been inclined to make minor downward adjustments to the amount of time that was billed, but it proved unnecessary because those minor time reductions were more than offset by the below market rate of $170 which [the paralegal] was billing. None of the itemized objections by SB to specific time entries causes this court to alter that conclusion. SB identified 164 entries totaling $32,098.00 that it thought the Wilentz firm should not be compensated for because it was secretarial work . . . . If, in fact, [those entries] are purely secretarial in nature it is still the case that Iron Mountain, a sophisticated consumer of legal services, does not find that objectionable. And, again, in this court's experience Iron Mountain is not unique in that.

(*Id.* at 11.)

In summary, the Bankruptcy Court developed a fulsome record on remand and abided by the District Court's instructions in conducting a reasonableness analysis of the paralegal fees under 11 U.S.C.S. § 506(b). Accordingly, the Bankruptcy Court is entitled to the "substantial degree of discretion . . . in assessing the reasonableness of claimed fees and costs" that the District Court could not originally find. *See In re 388 Route 22 Readington Holdings, LLC*, 2020 WL 6706958, at *7 (citing *Ryker v. Current*, 338 B.R. 642, 65 (D.N.J. 2006)). Consistent with the Third Circuit's guidance in *Busy Beaver* and the District Court's instructions in remanding, the Bankruptcy Court's findings drew from numerous sources discussed herein, including its own substantial experience, a sample of billing practices by similar firms in the market, a review of multiple years' worth of billing entries by Wilentz, and representations by counsel. 19 F.3d at 851–54; *In re 388 Route 22 Readington Holdings*, 2020 WL 6706958, at *6–8. The Court therefore finds no clear error in any of the Court's factual findings, and no abuse of discretion in its application of the appropriate legal standards to the facts.

B. SHERIFF'S FEES

The sole dispute on appeal related to the sheriff's fees pertains to whether Iron Mountain and SB entered into an agreement to shift the sheriff's fees onto the Debtor's estate. The District Court remanded the determination to the Bankruptcy Court, noting that in this case "it is possible that the parties displaced the 'seller pays' rule with their Confirmation Order, which grants Iron Mountain a right to all 'fees, costs, charges, and attorneys' fees' in the event of default . . . . That depends on whether the sheriff's fee constitutes a 'cost' covered by the Confirmation Order." 2020 WL 6706958, at *9. Phrased differently, "[t]here is no dispute regarding the sheriff's right to a commission, the only dispute is who should pay it." (Letter Decision at 12.). Again on this issue, the Bankruptcy Court thoroughly reviewed the record and, in over six pages, explained its sound reasoning concluding that, in this case, the parties intended that the sheriff's fees are to borne by the Debtor's estate.

The Bankruptcy Court began by correctly noting that Iron Mountain bore the burden to show that the Debtor was responsible for paying the sheriff's fees. (*Id.* at 13.) In finding that Iron Mountain met its burden in this instance, the Bankruptcy Court considered, among other things, the original terms of the Second Modified Plan; the provisions of the Confirmation Order, which amended the Plan; the parties' sophistication and conduct during the amendment and renegotiation process; and the governing provisions in the Bankruptcy Code and New Jersey law that define several of the terms at issue. (*Id.* at 13–17.)

The Bankruptcy Court first examined the Confirmation Order, which the District Court had noted might shift the burden from Iron Mountain to the Debtor. *In re 388 Route 22 Readington Holdings*, 2020 WL 6706958, at *9. The Confirmation Order had been entered on October 7, 2015, as part of the Debtor's prior bankruptcy before the case ultimately converted to chapter 7. (Letter

11

Decision at 13.) By this time, Iron Mountain had already attempted to conduct at least one sheriff's sale and filed a Proof of Claim against the Debtor which explicitly sought compensation for sheriff's fees, among other items. (*Id.* at 14.) The Debtor did not object to this Proof of Claim. (*Id.*) The Bankruptcy Court determined that, pursuant to both the Bankruptcy Code and the Second Modified Plan's definitional language, the Proof of Claim was deemed "allowed" because it was properly filed and met without objection. (*Id.* at 14–15.) As the claim incorporated the sheriff's fees and was allowed, the Bankruptcy Court found that this constituted a clear agreement that entitled Iron Mountain to compensation for the sheriff's fees, at least in this instance. (*Id.* at 15.)

The Confirmation Order, which subsequently modified the Second Modified Plan, only served to make this intention clearer. The Confirmation Order provided that "the Class 1 Creditor [Iron Mountain] shall have an Allowed Secured Claim against the Debtor and the Property and a stipulated claim against United States Land Resources, L.P. ("USLR") and Lawrence Berger ("Berger")." (*Id.* at 14.) In other words, by keeping the "allowed claim" language, the Plan continued to "define[] Iron Mountain's right to payment by reference to the proof of claim it had filed which explicitly included the sheriff's fee." (*Id.* at 15.)

Aside from the allowed claim language, the Bankruptcy Court cited additional language in the Confirmation Order which supported the conclusion that the parties intended the Debtor to bear the costs of the sheriff's fees. Specifically, the Confirmation Order stated that in the event of the Debtor's default under the new terms of the Plan, Iron Mountain would be entitled to "all obligations . . . including costs."[4] (*Id.* at 15–16.) The Bankruptcy Court noted that pursuant to New Jersey law, "[a] party to whom costs are awarded . . . is entitled to include in his bill of costs . . .

---

[4] The full text of the provision, located in Section (2)(I)(K) of the Confirmation Order, states that "all obligations owing to the Class 1 Creditor hereunder, including principal and all accrued and unpaid interest, fees, costs, charges and attorney's fees, shall accelerate and become immediately due and payable." Bankr. Case No. 13-26699, ECF No. 158.

12

Sheriff's fees for service of process or other mandate or proceeding." (*Id.* at 15 (citing N.J.S.A. 22A:2-8.) The inclusion of costs, supplemented by the "all obligations" language, provided an independent basis for the Bankruptcy Court to construe the Confirmation Order as shifting the sheriff's fees onto the Debtor. (*Id.* at 15–16.)

As a final point, the Bankruptcy Court observed that the parties' conduct supported its interpretation of the Confirmation Order. For one, "the default provision was added to the Plan as the enticement for Iron Mountain to withdraw its objection to confirmation of the Plan and it is logical that it would provide expansive protections for Iron Mountain in the event of default." (*Id.* at 16.) Moreover, the Order was "highly unusual" in that it was signed not just by the bankruptcy judge but also by each of the primary stakeholders, including Lawrence Berger on behalf of the Debtor. (*Id.* at 13–14.) The extensive negotiations and the fact that each stakeholder was represented by competent and experienced counsel "strongly suggests that every word in the Confirmation Order was well thought out and deliberate." (*Id.* at 14.)

"Under our case law, contract interpretation is a question of fact reviewed for clear error and contract construction is a question of law reviewed *de novo*." *In re Nat'l Collegiate Student Loan Trusts*, 971 F.3d 433, 443 (3d Cir. 2020) (citing *Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n*, 894 F.3d 509, 528 (3d. Cir. 2018)). "Contract interpretation involves determining the meaning of the contract language and giving effect to the parties' intent." *Id.* (citations omitted). "If the contract as a whole is susceptible to more than one reading, the fact finder resolves the matter, but if it is unambiguous and can be interpreted only one way, the court interprets the contract as a matter of law." *Allied Erecting & Dismantling, Co., Inc. v. USX Corp.*, 249 F.3d 191, 201 (3d Cir. 2001). As the Bankruptcy Court's entire efforts in this regard involved finding "evidence of the parties' intent regarding payment of the sheriff's fee" (*see* Letter Decision

at 14), and as no one — not the District Court, the Bankruptcy Court, or the parties — has asserted that the contract is clear and unambiguous on its face, the Court construes the issue as a matter of contract interpretation and will review the Bankruptcy Court's findings for clear error.

The Court can find no clear error in the detailed findings and sound analysis performed by the Bankruptcy Court briefly summarized herein. Rather, substantial evidence supports the Bankruptcy Court's conclusion that "the language of the Second Modified Plan of Reorganization expressly provides for Iron Mountain's allowed secured claim to include the costs from the sheriff sale." (*Id.* at 17.)

The Court finds Appellant's objections unpersuasive. Appellant somehow seeks the Court to construe the term "obligations owing to the Class I Creditor" as "an obligation which Iron Mountain . . . owes the Sheriff." (ECF No. 8 at 10.) Such an interpretation would subvert on its head a term which clearly discusses obligations <u>owed</u> to Iron Mountain, as the only Class I Creditor, and contort it to an obligation owed by Iron Mountain. Appellant also asserts that the Bankruptcy Court "fail[ed] to consider the meaning of the word 'costs' in the context of [the] contractual provision in which it appears," when in fact the Bankruptcy Court's Decision discussed this exact issue at length (*see* Letter Decision at 14–16) and merely arrived at a different interpretation than Appellant wishes. Appellant claims that the admitted sophistication of the parties implies that if the parties had intended a sheriff's fee-shifting provision, they would have been more explicit about it. (ECF No. 8 at 11–12.) This speculative argument does little to support the proposition that the Bankruptcy Court's finding was clearly erroneous. The presumption that a sheriff's fee is a "cost" under New Jersey law, coupled with Iron Mountain's explicit inclusion

of sheriff's fees in its unobjected "allowed" claim, provide strong support to the Bankruptcy Court's contrary finding.[5]

Accordingly, on review, the Court is not "left with the definite and firm conviction that a mistake has been committed." *In re CellNet*, 327 F.3d at 244. As substantial evidence supported the Bankruptcy Court's conclusion that the parties agreed for the Debtor's estate — not Iron Mountain — to pay the sheriff's fees, the Bankruptcy Court is affirmed.

---

[5] One argument that may have had theoretical merit is Appellant's contention that the Confirmation Order only provided for obligations existing at the time of execution, not future obligations such as subsequent sheriff's fees. (ECF No. 8 at 9.) While this interpretation of the Confirmation Order may be plausible in a vacuum, it is insufficient on appeal to upend the Bankruptcy Court's well-reasoned findings.

**I.   CONCLUSION**

For the foregoing reasons, the Bankruptcy Court's decision is AFFIRMED, and the appeal under Case Number 22-4275 is DISMISSED.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: July 17, 2023